**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COREY REED, | Case No.: 1:18-cv-1378 (AJN) |
| Plaintiff, | |
| -against- | |
| HARRY WINSTON, INC., | |
| Defendant. | |

**DEFENDANT HARRY WINSTON INC.'S MEMORANDUM OF**
**LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel. 212.885.5000
Fax 212.885.5002

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................2

LEGAL ARGUMENT ............................................................................................4

    POINT I PLAINTIFF'S ADA CLAIM MUST BE DISMISSED AS MOOT ..................6

        A.    There is No Legally Mandated Level of Conformity .................................7

        B.    HWI is Nonetheless Compliant with WCAG 2.0 level AA.......................8

        C.    HWI Will Remain ADA Compliant ........................................................14

    POINT II PLAINTIFF LACKS STANDING BECAUSE HE  HAS NOT PLED
        (OR INCURRED) A PARTICULARIZED INJURY ...........................................17

    POINT III PLAINTIFF'S CLAIM FOR VIOLATION OF  THE UNRUH CIVIL
        RIGHTS ACT MUST ALSO BE DISMISSED ...................................................21

CONCLUSION.......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Access Now, Inc. v. Blue Apron, LLC,
2017 WL 5186354 (D.N.H. Nov. 8, 2017) ...............................................................7

Already, LLC v. Nike, Inc.,
568 U.S. 85 (2013)...................................................................................................6

Ashcroft v. Iqbal,
556 U.S. 662 (2009).......................................................................................4, 5, 20

Azelyant v. B. Manischewitz Co.,
98-CV-2502(ILG), 2000 U.S. Dist. LEXIS 2192 (E.D.N.Y. Jan. 12, 2000)...........16

Bacon v. Walgreen Co.,
91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) .........................................................6, 16

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)...........................................................................................5, 20

Bernstein v. City of New York,
621 F. App'x 56 (2d Cir. 2015) ..............................................................................18

Campbell-Ewald Co. v. Gomez,
136 S. Ct. 663 (2016)................................................................................................6

Carpenter v. Raintree Realty, LLC,
No. CV 11–06798–RGK, 2012 WL 2579179 (C.D. Cal. July 2, 2012)..................21

Carroll v. New People's Bank, Inc.,
No. 1:17CV00044, 2018 WL 1659482 (W.D. Va. Apr. 5, 2018)................15, 16, 17

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002).....................................................................................4

Clear Channel Outdoor, Inc. v. City of N.Y.,
594 F.3d 94 (2d Cir. 2010)..................................................................................6, 16

Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L.,
790 F.3d 411 (2d Cir. 2015).....................................................................................4

Daniels v. Arcade, L.P.,
477 Fed.Appx. 125 (4th Cir. 2012).........................................................................20

ii

Feltzin v. Triangle Props. #1, LLC,
   No. 14-cv-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861 (E.D.N.Y.
   Dec. 15, 2016)..................................................................................................17, 19

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
   528 U.S. 167 (2000)...............................................................................................17

Gil v. Winn–Dixie Stores, Inc.,
   No. 16–cv–23020, 2017 WL 2547242 (S.D. Fla. June 12, 2017) ...........................10

Harnett v. Fielding Graduate Inst.,
   400 F. Supp. 2d 570 (S.D.N.Y. 2005), aff'd sub nom. Hartnett v. Fielding
   Graduate Inst., 198 F. App'x 89 (2d Cir. 2006)........................................................8

Haynes v. Brinker Int'l, Inc.,
   No. 17-CV-61265, 2017 WL 4347204 (S.D. Fla. Sept. 29, 2017) ...........................15

Haynes v. Interbond Corp. of Am.,
   2017 WL 4863085 (S.D. Fla. Oct. 16, 2017)..............................................................7

Haynes v. Panda Express, Inc.,
   No. 17-CV-61567, 2018 WL 538698 (S.D. Fla. Jan. 24, 2018)...............................15

Hindel v. Husted,
   No. 2:15–cv–3061, 2017 WL 432839 (S.D. Ohio Feb. 1, 2017)...............................10

Hurley v. Tozzer, Ltd.,
   2018 U.S. Dist. LEXIS 18808 (S.D.N.Y. Feb. 2, 2018)...........................................20

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
   62 F.3d 69 (2d Cir. 1995) ........................................................................................4

J.S. ex rel. N.S. v. Attica Cent. Schs.,
   386 F.3d 107 (2d Cir. 2004).....................................................................................4

Kelley v. Sparrer,
   No. 2:17-CV-00688, 2018 WL 2768660 (D. Utah June 8, 2018) ...........................16

Lentini v. Cal. Ctr. for the Arts,
   370 F.3d 837 (9th Cir. Cal. 2004).............................................................................21

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992)................................................................................................17

Makarova v. United States,
   201 F.3d 110 (2d Cir. 2000).....................................................................................4

McAllister v. Metropolitan Transit Authority,
 No. 13 Civ. 2060, 2013 WL 4519795 (E.D.N.Y. Aug. 26, 2013) ...........................................5

Munson v. Del Taco, Inc.
 (2009) 46 Cal.4th 661 ......................................................................................................21

Oliver v. Ralphs Grocery Co.,
 654 F.3d 903 (9th Cir. 2011) ...........................................................................................21

Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.
 Morgan Stanley Inv. Mgmt. Inc.,
 712 F.3d 705 (2d Cir. 2013) ...............................................................................................5

Robles v. Domino's Pizza LLC,
 No. CV1606599SJOSPX, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017) .............................7

Rodgers v. Chevys Restaurants, LLC,
 No. C13-03923 HRL, 2015 WL 909763 (N.D. Cal. Feb. 24, 2015) ....................................21

Shaywitz v. Am. Bd. of Psychiatry & Neurology,
 675 F. Supp. 2d 376 (S.D.N.Y. 2009) ................................................................................18

Shipping Fin. Servs. Corp. v. Drakos,
 140 F.3d 129 (2d Cir. 1998) ................................................................................................4

Spector v. Norwegian Cruise Line Ltd.,
 545 U.S. 119 (2005) ............................................................................................................8

Spokeo, Inc. v. Robins,
 136 S. Ct. 1540 (2016) ......................................................................................2, 17, 18, 20

Strubel v. Comenity Bank,
 842 F.3d 181 (2d Cir. 2016) ..............................................................................................18

Thomas v. Ariel West,
 242 F. Supp. 3d 293, 298 ....................................................................................................6

Thomas v. Grunberg 77 LLC,
 No. 15-CV-1925, 2017 U.S. Dist. LEXIS 104606 (S.D.N.Y. July 5, 2017) ...................6, 14

Van Praagh v. Gratton,
 993 F. Supp. 2d 293 (E.D.N.Y. 2014) ................................................................................18

Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi,
 215 F.3d 247 (2d Cir. 2000) ................................................................................................4

iv

**Statutes**

42 U.S.C.A. § 12182 ..............................................................................................8

28 U.S.C. § 1367(c)(1) .......................................................................................21

42 U.S.C. § 12181 ...................................................................................... *passim*

Cal. Civ. Code § 51, *et. seq* ......................................................................1, 2, 21

Cal. Civ. Code § 51(f) .........................................................................................21

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ..........................................................................................5

Fed. R. Civ. P. 12(b)(1) ............................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................................4

https://www.ada.gov/regs2016/sanprm.html .......................................................9

WCAG 2.0 (https://www.w3.org/TR/WCAG20/) ..............................................13

www.harrywinston.com .................................................................................1, 13

www.w3.org ........................................................................................................12

Defendant Harry Winston, Inc. ("HWI") respectfully submits this Memorandum of Law in support of its motion to dismiss Plaintiff Corey Reed's February 15, 2018 Complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## PRELIMINARY STATEMENT

This lawsuit is one of hundreds of website accessibility cases filed in New York utilizing largely form complaints with virtually identical allegations and theories, which hijack statutes designed to legitimately preclude commercial discrimination against visually impaired consumers, as a vehicle for corporate shakedowns.

HWI is a luxury jewelry and high-end watch company selling luxury goods under the Harry Winston brand. The HWI brand is built upon not just quality manufacturing and styling, but upon consumer recognition and satisfaction which HWI markets to, and is derived from *all* customers. The notion that HWI promotes a "policy and practice" (Complaint ¶ 30, ECF No. 1) of erecting barriers to customer purchases of its consumer-focused products is patently absurd, indeed, offensive, and is anathema to the core of HWI and its business model of offering jewelry and watches to all customers.

Plaintiff identifies himself as a California resident and visually impaired and legally blind consumer who has been discriminated against by virtue of the website www.harrywinston.com (the "HW Website"), which Plaintiff alleges is a "place of public accommodation" that is inaccessible to Plaintiff and other visually-impaired persons in violation of Title III of the American Disabilities Act, 42 U.S.C. § 12181, *et. seq.* ("ADA"), as well as the California Unruh Civil Rights Act, California Civil Code § 51, *et. seq.* ("Unruh"). Plaintiff alleges the HW Website violates the ADA and Unruh because HWI failed to design, construct, maintain, and operate the

HW Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired visitors.

As the declarations and documents (which may considered in a Fed. R. Civ. 12(b)(1) motion) definitively demonstrate, the HW Website is, in fact, currently in compliance with the version 2.0 protocol of the Web Content Accessibility Guidelines ("WCAG 2.0 Guidelines") level AA, private guidelines which, although not legally mandated, have been expressly referenced by the United States Department of Justice ("DOJ") as the accessibility standard for websites and web content.  And HWI has engaged a number of steps to guarantee continued full compliance with the WCAG 2.0 Guidelines level AA, in addition to making the HW Website accessible to the visually impaired.  HWI therefore moves to dismiss Plaintiff's ADA claim pursuant to Rule 12(b)(1) for lack of standing on the ground that alleged access barriers on the HW Website do not exist (if they ever did) and, thus, there is no longer a live case or controversy before the Court.

Further, even if dismissal is not warranted solely because Plaintiff lacks standing, dismissal is nonetheless compelled by the fact that the Complaint's bare and abstract allegations of injury cannot survive dismissal under the Supreme Court's seminal <u>Spokeo</u> decision, which requires Plaintiff to adequately plead an injury-in-fact.  Finally, as the basis for subject matter jurisdiction is premised on this Court's federal question jurisdiction over Plaintiff's ADA claim, Plaintiff's California state law Unruh claim must be dismissed along with his ADA claim.

## STATEMENT OF RELEVANT FACTS

Plaintiff alleges he is a "visually-impaired and legally blind person who requires screen-reading software to read website content using her (*sic*) computer."  (Complaint ¶ 1, ECF 1).  During his purported visits to the HW Website, Plaintiff allegedly encountered access barriers that

2

denied him full and equal access to the products and services made available through the HW Website. Id. ¶ 36.

In particular, Plaintiff alleges that, when he visited the HW Website in January 2018, Plaintiff found "unlabeled buttons and links" and "at least one cursor trap" that prevented him from navigating the HW Website. Id. ¶ 35. Plaintiff claims that, because of these alleged "barriers" he cannot browse, shop, register for the online newsletter, or locate the nearest store on the HW Website. Id. Moreover, Plaintiff alleges that certain "[u]nlabeled images and/or video content" on the HW Website "left Plaintiff uncertain whether those images were informative or decorative or both," and that the "combination of unlabeled links, buttons and graphics render the website unintelligible and prevent navigation and use." Id.

Plaintiff seeks a permanent injunction under the ADA requiring HWI to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to comply with the ADA and make the website accessible" by "modify[ing] the website's functionality so as to provide effective communication about the goods, services and/or privileges offered by the website to screen-reader users, instead of only providing such functionality to sighted persons." Id. ¶ 47. In particular, Plaintiff seeks an injunction requiring HWI to (a) train its employees and agents who develop the HW Website on accessibility and compliance with the ADA using criteria which will provide effective communication to persons who blind and use screen-readers, (b) regularly check the accessibility of the HW Website to maintain accessibility as required by the ADA using criteria which will provide effective communication to persons who blind and use screen-readers, (c) regularly test end-user accessibility of the websites by screen-reader users to ensure that the HW Website is accessible to blind and visually-impaired individuals who would access them with screen-reading technology and prove effective communication, and (d) develop an accessibility

3

policy that is clearly disclosed on the HW Website, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after HWI has investigated and identified the accessibility-related problem.  Id. ¶ 48.

As set forth below, the HW Website is not only fully accessible to the visually impaired, but also WCAG 2.0 level AA complaint, and fully functional to the blind.

## LEGAL ARGUMENT

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it.'"  Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); accord J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  In general, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits..."  Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

To survive a Fed. R. Civ. P. 12(b)(6) dismissal motion, a complaint must include sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On the factual sufficiency prong, the pleading standard of Fed. R. Civ. P. 8(a)(2) demands more than an unadorned, 'the-defendant-unlawfully-harmed-me' accusation.   Ashcroft v. Iqbal, 556 U.S. at 677-79.   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of 'further factual enhancement."   Id.   The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."   Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013).

With respect to the "facial plausibility" prong, a claim meets this standard when factual content is pleaded that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   Id. at 718.   A complaint cannot simply recite legal conclusions or bare cause of action elements; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. at 678.

Facts must be pleaded that "nudg[e] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 1949. To survive a motion to dismiss, a pleading "requires factual allegations that, taken as true, demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" McAllister v. Metropolitan Transit Authority, No. 13 Civ. 2060, 2013 WL 4519795, at *3 (E.D.N.Y. Aug. 26, 2013) (*citing* Iqbal, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Pension Ben. Guar. Corp., 712 F.3d at 718.

**POINT I**
**PLAINTIFF'S ADA CLAIM MUST BE DISMISSED AS MOOT**

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016)). "A case becomes moot – and therefore no longer a 'case' or 'controversy' for purposes of Article III – 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013). Critically, "it is the Court's obligation, even where no motion is made, to dismiss an action if it 'perceives at any stage of the proceedings that it lacks subject matter jurisdiction.'" Thomas v. Grunberg 77 LLC, No. 15-CV-1925, 2017 U.S. Dist. LEXIS 104606, at *7 (S.D.N.Y. July 5, 2017); 12(b)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Second Circuit recognizes that a claim for injunctive relief is rendered moot where: "(1) there is no reasonable expectation that the alleged violation will recur[,] and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation[.]" Clear Channel Outdoor, Inc. v. City of N.Y., 594 F.3d 94, 110 (2d Cir. 2010). "It is well established that Title III of the ADA allows only for injunctive relief, not monetary damages." Bacon v. Walgreen Co., 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015).

Therefore, "a claim under the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation." Id.; see also, Thomas v. Ariel West, 242 F. Supp. 3d 293, 298 n. 2 (S.D.N.Y. 2017) ("Plaintiff's federal claims related to the conditions that [defendant] has voluntarily remedied are moot in the sense that the Court is unable to grant Plaintiff any form of relief (as Title III's only remedy is prospective injunctive relief)"). "Accordingly, if the underlying dispute in a lawsuit is no longer 'live,' the case becomes moot, and the court will no longer have the authority to adjudicate the case." Bacon, 91 F. Supp. 3d at 451.

## A. **There is No Legally Mandated Level of Conformity**

No federal or New York state regulations have been promulgated governing the application of the ADA to private sector websites, and neither the Supreme Court nor any Court of Appeal in the United States has directly addressed the issue. Haynes v. Interbond Corp. of Am., 2017 WL 4863085, at *4 (S.D. Fla. Oct. 16, 2017). Notably, there is no requirement under the ADA that a website comply with any particular website accessibility guidelines and, in fact, any attempt to hold a company liable for failure to comply with independent accessibility standards not promulgated by the Department of Justice, such as the WCAG 2.0 AA standards, "may violate due process requirements." See Access Now, Inc. v. Blue Apron, LLC, 2017 WL 5186354, at *7 (D.N.H. Nov. 8, 2017) (stating that "compliance with the WCAG 2.0 AA standards [is] a sufficient condition, but not a necessary condition, for such compliance [with Title III of the ADA]"); Robles v. Domino's Pizza LLC, No. CV1606599SJOSPX, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017).

In Robles, a leading national decision on ADA website accessibility cases, the District Court observed that, "after conducting a diligent search, [the court was] unable to locate a single case in which a court has suggested, much less held, that persons and entities subject to Title III [of the ADA] that have chosen to offer online access to their goods or services *must do so in a manner that satisfies a particular WCAG conformance level.*" Id. at *8 (emphasis added). Accordingly, the court concluded that imposing liability under the ADA for an alleged failure to abide by certain accessibility standards may violate the website owner's constitutional right to due process, granting the owner's dismissal motion. Id.

The ADA does not mandate absolute compliance, no matter how small the infraction, and expressly exempts compliance where "such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue

burden." 42 U.S.C.A. § 12182; <u>Spector v. Norwegian Cruise Line Ltd.</u>, 545 U.S. 119, 129 (2005)

("the barrier-removal and alternative access requirements do not apply when these requirements

are not 'readily achievable'").  In assessing "undue hardship," courts will also take into account

the proportionality of the benefit as a whole;

> *The ADA defines undue hardship as an action requiring significant*
> *difficulties or expense when considered in light of a number of*
> *factors, one being the type of service or product offered.*
> *Accordingly, this Circuit has recognized that undue hardship is a*
> *relational term—it looks not only at the costs of providing the*
> *proposed accommodation, but also the benefits that will result.  In*
> *other words, an accommodation is reasonable only if its costs are*
> *not disproportionate to the benefits that it will produce.*

<u>Harnett v. Fielding Graduate Inst.</u>, 400 F. Supp. 2d 570, 576–77 (S.D.N.Y. 2005), <u>aff'd sub</u>

<u>nom.</u> <u>Hartnett v. Fielding Graduate Inst.</u>, 198 F. App'x 89 (2d Cir. 2006) (internal citations and

quotations omitted).

Therefore, the mootness inquiry is not invitation to test for WCAG 2.0 AA non –

conformity, no matter how small, but is instead concerned only with "readily achievable" removal

of access barriers.  <u>Spector</u>, 545 U.S. at 129.

## B.   <u>HWI is Nonetheless Compliant with WCAG 2.0 level AA</u>

Despite Congress and the DOJ's failure to formally set minimum web accessibility

standards for the benefit of the visually impaired, WCA 2.0 level AA has been elevated to an

internationally recognized benchmark for web accessibility.  A higher degree of compliance has

not been proposed, much less recognized, by any governmental authority.[1]  Through Section 508

---

[1]In a July 26, 2010 Notice of Proposed Rulemaking, the DOJ noted that the Web Accessibility
Initiative (WAI) of the World Wide Web Consortium (W3C) – the organization that created the
recognized voluntary international guidelines for Web accessibility that are set out in the Web
Content Accessibility Guidelines (WCAG) – does not recommend conformance beyond WCAG
2.0 AA as a general policy, because it is not always possible to satisfy the highest conformance
level, "AAA," criteria.  <u>See</u> Federal Register / Vol. 75, No. 142 / Monday, July 26, 2010 /

of the Rehabilitation Act, the federal government promulgated website accessibility standards establishing WCAG 2.0 level AA, promulgated by the WAI, as the standard for federal government websites.[2]  In its Supplemental Advance Notice of Proposed Rulemaking on State and Local Government Web Accessibility, the DOJ proposed WCAG 2.0 level AA as the accessibility standard for all websites and web content.  The DOJ noted that WCAG 2.0 has become the internationally recognized benchmark for web accessibility.  (See Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities, RIN 1190-AA65, available at https://www.ada.gov/regs2016/sanprm.html).[3]

WCAG 2.0 defines how to render web content accessible to website visitors with disabilities.  (See June 21, 2018 Declaration of Andreas Uebelbacher, Head of Accessibility Services, Access for All Foundation ("Uebelbacher Decl.") ¶ 11).   Accessibility involves requirements with regard to a wide range of disabilities, including visual, auditory, physical, and cognitive disabilities.  (Id.).  Although WCAG 2.0 guidelines are not issued by a governmental

---

Proposed Rules," available at: https://www.gpo.gov/fdsys/pkg/FR-2010-07-26/pdf/2010-18334.pdf  (last visited on June 18, 2018).

[2] See Information and Communication Technology (ICT) Standards and Guidelines, 82 FR 5790-01, available at https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00395.pdf last visited on June 18, 2018).

[3] On December 26, 2017, the DOJ announced the formal withdrawal of RIN 1190-AA65.  Specifically, the DOJ stated that it was "evaluating whether promulgating regulations about the accessibility of Web information and services is necessary and appropriate. Such an evaluation will be informed by additional review of data and further analysis. The Department will continue to assess whether specific technical standards are necessary and appropriate to assist covered entities with complying with the ADA.  (See Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four Previously Announced Rulemaking Actions, available at https://www.federalregister.gov/documents/2017/12/26/2017-27510/nondiscrimination-on-the-basis-of-disability-notice-of-withdrawal-of-four-previously-announced last visited on June 18, 2018).

agency or the DOJ, and cover a wide range of issues, they are designed to render and make web content more usable by the disabled.  (Uebelbacher Decl. ¶ 12).  The WCAG 2.0 level AA standard has been adopted by U.S. courts as a de facto ADA website accessibility compliance standard. See, e.g., Gil v. Winn–Dixie Stores, Inc., No. 16–cv–23020, 2017 WL 2547242, at *9 (S.D. Fla. June 12, 2017) (ordering "[r]emediation measures in conformity with the WCAG 2.0 Guidelines" following a bench trial wherein defendant's representative testified that such modifications were feasible); Hindel v. Husted, No. 2:15–cv–3061, 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (ordering the Ohio Secretary of State "to make his website . . . accessible to all individuals, . . . including conforming with the [WCAG] 2.0 Level A and AA Success Criteria . . . .").

WCAG 2.0 is developed through the W3C process in cooperation with individuals and organizations around the world, with a goal of providing a shared standard for web content accessibility that meets the needs of individuals, organizations, and governments internationally. (Uebelbacher Decl. ¶ 13).  WCAG 2.0 is designed to apply broadly to different web technologies now and in the future, and to be testable with a combination of automated testing and human evaluation.  (Id. ¶ 14).  Web accessibility depends not only on accessible content but also on web browsers and other user agents supporting accessibility. Authoring tools also have an important role in web accessibility.  (Id. ¶ 15).

The individuals and organizations that use WCAG vary widely and include web designers and developers.  (Id. ¶ 16).  In order to meet the varying needs of this audience, several layers of guidance are provided including certain principles and guidelines, testable success criteria, and advisory techniques.  (Id.).  Principles provide the foundation for web accessibility: perceivable, operable, understandable, and robust.  (Id. ¶ 17).  The guidelines provide the framework and

overall objectives to assist designers understand the success criteria and better implement the techniques (Id.).  For each guideline, there are testable success criteria to allow WCAG 2.0 to be used where requirements and conformance testing are necessary such as in design specification. In order to meet the needs of different groups and different situations, three levels of conformance are defined: A (lowest), AA, and AAA (highest).  (Id. ¶ 18).

HWI has met the ADA's requirement of "readily achievable" barrier removal because the HW Website is fully compliant with WCAG 2.0 level AA, and by ensuring the HW Website's continued compliance with this prevailing benchmark. (June 21, 2018 Declaration of Robert Scott, CFO, HWI ("Scott Decl.") ¶¶ 6-8).

HWI retained the services of a third-party testing and compliance vendor, Access For All ("AFA") to test the HW Website, pursuant to rigorous and independent testing standards under the WCAG 2.0 guidelines.  (Id. ¶ 2).  AFA is a leading nonprofit foundation based in Switzerland which provides services for the disabled in a variety of contexts and ways, and employs disabled persons to examine products that are tested for their accessibility to the disabled, including website accessibility.  (Uebelbacher Decl. ¶¶ 3-9).  AFA is an independent foundation for technology adapted to people with disabilities, created in 2000 by a blind computer scientist, for the purpose of promoting equal-opportunity technology use. AFA serves as the facilitator between people with disabilities, for whom technology constraints are most evident, and device and information suppliers from the private and public sector.  (Id. ¶ 4).

AFA is a center of competence for all accessibility-related information, and with its many years of experience, the foundation actively contributes to the promotion of accessibility.  (Id. ¶ 5).  The primary objectives of AFA include (i) raising public awareness, and especially that of service providers (e-government, e-commerce, e-business), about accessibility and limitations of

users with special needs; (ii) contributing knowledge to information technology projects to practically advance accessibility of the respective services; (iii) supporting and initiating development and research projects in the field of accessibility technology; (iv) establishing a center of competence to support information providers; and (v) establishing contact with national and international specialist organizations in order to seek synergies.  (Id. ¶ 6).  AFA also provides research, services, awareness raising, and education to ensure that products, including websites, are accessible to the visually impaired, and employs blind persons to test website accessibility, including content and applications.  (Uebelbacher Decl. ¶ 7).

Not only does AFA test for visual impairment and blindness accessibility, but also for hearing impairment and deafness, motor impairment, cognitive and neurological impairments, age related impairments, and other disabilities.  (Id. ¶ 8).  Typical problems of websites for people with visual impairments include, but are not exclusive, insufficient color contrasts; insufficient scalability; alternatives for visual information; insufficient semantics; and insufficient screen reader operability.  (Id. ¶ 9).  AFA engages in website testing to check for requirements with regard to visual impairment and standards to ensure a website is available to the visually impaired and to visitors with screen readers.  (Id.).[4]

HWI requested AFA to perform testing on the HW Website to discover the extent to which any of the-above referenced attributes existed on HW Website.  (Id.¶ 10).  AFA tested the HW Website through June 2018 to discern WCAG 2.0 level AA compliance.  (Id. ¶¶ 10, 19-22).  AFA conducted its testing according to its standard procedures independent of Harry Winston, Inc., but

---

[4] Details of the testing by AFA and the methods of discerning WCAG 2.0 AA compliance are located at the www.w3.org and AFA website pages including: https://access-for-all.ch/en/accessibility.html.

12

was in contact with Harry Winston, Inc. for access to the website, to discuss potential solutions to problems, etc.  (Id.¶ 10).

In particular, during the period April, 2018 to June 18, 2018, AFA took the following steps to ensure accessibility of the HW Website:

- Accessibility audit for WCAG 2.0, levels of conformity A & AA
- User testing by blind accessibility experts using various screen reader technologies (JAWS and NVDA)
- Reporting of accessibility problems and recommendations to reach WCAG 2.0 AA compliance
- Retesting of improved website
- Accessibility consulting for how to improve the website with regard to specific screen reader difficulties

(Uebelbacher Decl. ¶ 19).

All audits and reviews were based on WCAG 2.0 levels of conformance A & AA.[5]  This includes requirements for people with disabilities in all four areas, visual, auditive, motor and cognitive impairments.  (Id. ¶ 20).  Testing took place on different screen reader-browser combinations (e.g. IE, Firefox, JAWS, NVDA). (Id. ¶ 21).  All tests included broad samples of pages of the HW Website, specifically selected to cover all different page structure types, and a broad scope of interface elements and content types.  (Id. ¶ 22).

AFA's testing revealed the HW Website's compliance with the WCAG 2.0 success criteria on level AA conformity.  (Id. ¶¶ 23, 26).  AFA confirmed that the HW Website contained additional features, going beyond WCAG 2.0 requirements, including offering orientation cues for screen reader users (e.g. visually hidden headings, etc.).  (Id. ¶ 24).  AFA also confirmed that the HW Website has functionality and content which provides communication about the goods, services and/or privileges offered by the HW Website to make sure these can also be used by

---

[5] Available at https://www.w3.org/TR/WCAG20/ (last visited on June 21, 2018).

screen reader users, instead of only providing such functionality and content to sighted persons. (Id. ¶ 25).

As a result of the tests that AFA ran on the HW Website, on June 18, 2018, AFA issued a certificate, certifying the HW Website was "*compliant with the requirements for an accessible website, according to WCAG 2.0 level AA.*" (See WCAG 2.0 Certificate of Compliance, Uebelbacher Decl. ¶ 26, Exhibit A).

AFA's testing and forensic examination of the HW Website confirms that as of June 18, 2018, the HW Website is WCAG 2.0 level AA compliant and available to the visually impaired, including users with a screen reader. The HW Website is thus fully accessible to visually impaired and legally blind consumers, and any injunctive relief requesting this very thing is therefore moot. Thomas, 242 F. Supp. 3d at 298 n. 2.

## C.   HWI Will Remain ADA Compliant

HWI has employed a variety of measures to ensure continued future compliance of the Website with the WCAG 2.0 protocols. (Scott Decl. ¶ 7). Such measures include, without limitation:

(i) train employees and agents who develop the HW website and its code on accessibility and compliance with ADA, including to render the HW Website accessible to the blind and visually impaired users who employ screen readers;

(ii) check the accessibility of the HW Website to maintain accessibility as required by the ADA;

(iii) test end-user accessibility of the HW Website by screen reader users to ensure the HW Website is accessible to blind and visually-impaired users;

(iv) update the HW Website to include an accessibility policy

14

Scott Decl. ¶ 8.

HWI has committed to ensure that such regular training and efforts are regularly implemented and that the HW Website remains WCAG 2.0 AA compliant and fully accessible, both functionally and practically, to the blind and visually impaired, including with all screen readers.  Scott Decl. ¶ 9.

Plaintiff expressly acknowledges that *"maintaining and providing a website that is fully and equally accessible to all consumers would provide Plaintiff and other visually-impaired consumers with equal access to [the HW Website]"* (Complaint ¶ 44).  The HW Website is compliant with the WCAG 2.0 Guidelines level AA, which renders the HW Website fully and equally accessible to all consumers.  Notably, the above-referenced steps that HW employed and will continue to employ to ensure compliance track the precise injunctive relief demanded by Plaintiff.  (Complaint ¶ 48).  As HWI has represented its commitment to maintaining the HW Website fully ADA compliant going forward, there is no reasonable expectation that the alleged accessibility barriers will recur.

Under prevailing national authority, and pursuant to these circumstances – the independently certified absence of the claimed barriers, with combined specific and concrete assurance of future accessibility – the ADA claim for injunctive relief compelling removal of barriers is moot.  See, e.g., Carroll v. New People's Bank, Inc., No. 1:17CV00044, 2018 WL 1659482, at *4 (W.D. Va. Apr. 5, 2018) (ADA website accessibility claim dismissed as moot because defendant made its website ADA compliant after the lawsuit was filed); Haynes v. Panda Express, Inc., No. 17-CV-61567, 2018 WL 538698, at *3 (S.D. Fla. Jan. 24, 2018) (ADA website accessibility claim dismissed as moot where defendants already agreed to remedy the alleged non-compliance); Haynes v. Brinker Int'l, Inc., No. 17-CV-61265, 2017 WL 4347204, at *3 (S.D. Fla.

Sept. 29, 2017) (dismissing case on mootness grounds because Brinker's updating of its previously non-ADA complaint website and placing an accessibility notice thereon "ensure[d] that the allegedly wrongful behavior could not reasonably be expected to recur"); see also Clear Channel Outdoor, Inc., 594 F.3d at 110 (plaintiff's speculation that defendant would fail to enforce its regulations and revert to a pattern of non-enforcement after the resolution of the litigation was insufficient to counter the mooting effect of the City's post-litigation actions to cure the alleged constitutional violation plaintiff complained about); Kelley v. Sparrer, No. 2:17-CV-00688, 2018 WL 2768660, at *3 (D. Utah June 8, 2018) ("Notably, Mr. Kelley offers no reason as to why the Sparrer would willingly violate the ADA after spending $690 to bring the McDonald's of Taylorsville into compliance"); Bacon, 91 F. Supp. 3d at 448 ("plaintiff's claims under the ADA are moot, because Walgreens has remedied the issue," rejecting claims that the access barriers associated with security sensors not moto because such sensors could theoretically be moved one day); Azelyant v. B. Manischewitz Co., 98-CV-2502(ILG), 2000 U.S. Dist. LEXIS 2192, at *24 (E.D.N.Y. Jan. 12, 2000) (ADA claim by hearing impaired employee dismissed as moot, because barrier removed installation of a TTY telephone in addition to regular pay phones).

In Carroll v. New People's Bank, Inc., plaintiff brought an ADA claim against New People's Bank, alleging (as Plaintiff does here) that he was unable to navigate the bank's website because of its alleged accessibility barriers. 2018 WL 1659482, at *1. New People's Bank argued that it "voluntarily made a number of improvements" to the allegedly non-ADA complaint website and, as HWI did here, retained a third-party to "further improve [the website's] accessibility and client service feature-set." Id. at *4. In rejecting plaintiff's argument that there was no guarantee that New People's Bank would not revert to its former inaccessible website in the future, the court dismissed the complaint on mootness grounds, noting that "[d]eveloping a website is not a minor

16

undertaking," and "find[ing] it unlikely that [New People's Bank] would return to a website that is less functional and contains the alleged accessibility barriers."  Id.

Therefore, given that the ADA controversy is no longer "live," Plaintiff's claims are moot and the Complaint must be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. Proc. 12(b)(1).

## POINT II
### PLAINTIFF LACKS STANDING BECAUSE HE HAS NOT PLED (OR INCURRED) A PARTICULARIZED INJURY

The Complaint also should be dismissed because Plaintiff has failed to plead an injury-in-fact, thereby depriving the Court of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). "Even where a plaintiff personally encounters conditions that allegedly violate the ADA, however, such encounter must cause an injury that is both concrete and particular to the plaintiff in order to be sufficient to establish standing." Feltzin v. Triangle Props. #1, LLC, No. 14-cv-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861, at *12 (E.D.N.Y. Dec. 15, 2016) "A harm is "particularized" if it "affect[s] the plaintiff in a personal and individual way." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, n.1 (1992). Injury is "concrete" if it is "de facto;" that is, it must actually exist rather than being only "abstract." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Id. at 154

17

The Supreme Court's <u>Spokeo</u> decision confirmed that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." <u>Id.</u> at 1549; <u>Strubel v. Comenity Bank</u>, 842 F.3d 181, 189 (2d Cir. 2016) (no statutory violation if no injury in fact).  Plaintiffs seeking injunctive relief must also demonstrate a "real and immediate threat of future injury." <u>Bernstein v. City of New York</u>, 621 F. App'x 56, 57 (2d Cir. 2015); <u>Shaywitz v. Am. Bd. of Psychiatry & Neurology</u>, 675 F. Supp. 2d 376, 382 (S.D.N.Y. 2009).

Plaintiff has suffered no concrete and particularized injury which is fairly traceable to any actions by HWI.  Plaintiff alleges that he found "unlabeled buttons and links" and "at least one cursor trap" that prevented him from navigating the HW Website. (Complaint ¶ 35)  But Plaintiff does not identify what, if any, portions of the HW Website these allegedly unlabeled buttons and links prevented him from accessing – nor does Plaintiff specifically identify the alleged unlabeled buttons and links.

Plaintiff claims that because of the alleged barriers, he could not "shop" on the HW Website. <u>Id</u>.  But the HW Website does not provide users with the option to make purchases.[6] Plaintiff also alleges that certain unlabeled images and/or video content left Plaintiff uncertain whether those images were informative or decorative or both. (Complaint ¶ 35)  But Plaintiff fails to explain how he was injured by being uncertain whether certain images were informative or decorative.  Instead, Plaintiff claims, in conclusory fashion, that the "combination of unlabeled

---

[6] The Court may consider the HW Website in deciding this motion, insofar as the Complaint refers to the same.  <u>See</u> <u>Van Praagh v. Gratton</u>, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (stating that "the Court will consider the Defendant's website, as it was incorporated by reference in the Plaintiff's Complaint").

links, buttons and graphics render the website unintelligible and prevent navigation and use." Id.

Yet Plaintiff neglects to explain exactly what about the HW Website is impossible to understand, and how he was injured by the purportedly unintelligible nature of the HW Website. As such, Plaintiff's allegations are patently insufficient to confer standing. Feltzin, 2016 U.S. Dist. LEXIS 192861, at *15 (dismissing ADA claim for lack of standing where "plaintiff's claim that he 'personally encountered' each of a long list of violations amounts to no more than a conclusory recitation of the legal elements of a direct injury under the ADA."). Absent some causal connection between the violations and an actual injury, the Court is deprived of subject matter jurisdiction. Id. at *16 (E.D.N.Y. Dec. 15, 2016) ("Plaintiff makes no attempt to tether his laundry list of alleged [ADA] violations to any alleged injury. Absent such a connection, plaintiff lacks standing.").

Plaintiff makes conclusory and vague claims that he was "deterred, more than once," from accessing the HW Website. (Complaint ¶ 36), and that "on more than one occasion in 2018" he encountered barriers to access while "attempt[ing] to do business with [HWI] by using Harrywinston.com" (Id. ¶ 37) These ambiguous allegations suggest that Plaintiff was unable to independently navigate the HW Website and complete some desired transaction. But the Complaint does not connect any alleged barriers to specific portions or content of the HW Website that allegedly could not be viewed by Plaintiff with the aid of a facility assisting the visually impaired. (Complaint, *passim*)

Nor does Plaintiff specify any "transaction" that he wanted to make. Again, the HW Website does not allow for online purchases, and Plaintiff makes no allegations that the alleged "barriers" are related to the store locator feature or to any product that Plaintiff was actually interested in purchasing at a HWI salon. Indeed, Plaintiff does not even allege that he wanted to

visit a HWI physical location to view and/or purchase products.  Id.  Plaintiff's allegation that he was "deterred" from doing business with HWI is thus implausible on its face. Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 1949.

And even if the Court credits Plaintiff's claim that alleged "barriers" prevented him from locating the nearest store (Complaint ¶ 35), the Court can draw on its own experience to ascertain that store address information is readily available through numerous means, including a basic Google search; utilizing audio assistance like the iPhone "Siri" and similar features; calling 411 (Information); calling the store itself (no allegation is made that Plaintiff did not have access to the phone number); and other similar means.  Given the clear availability of the store location, Plaintiffs allegation of "deterrence" from vising the store is implausible.

No facts are alleged that allow the Court to infer the nature of the harm caused to Plaintiff or how that harm is traceable to the alleged violation that would raise the claim above a speculative level, requiring dismissal of the ADA claim under Fed. R. Civ. P. 12(b)(1).  Spokeo, 136 S. Ct. at 1548; Iqbal, 556 U.S. at 679.

Finally, in the context of the ADA, a plaintiff must not only plead a past injury but also a "real and immediate threat" that he will be injured again.  Daniels v. Arcade, L.P., 477 Fed.Appx. 125, 129 (4th Cir. 2012).  As demonstrated above, the HW Website is fully compliant with WCAG 2.0 level AA.  HWI is fully committed to keeping it that way.  (Scott Decl. ¶¶ 7-9).  Thus, there is no real and immediate threat of future injury.  Hurley v. Tozzer, Ltd., 2018 U.S. Dist. LEXIS 18808, at *7 (S.D.N.Y. Feb. 2, 2018) (future harm must be shown to establish standing for ADA case).

## POINT III
## PLAINTIFF'S CLAIM FOR VIOLATION OF
## THE UNRUH CIVIL RIGHTS ACT MUST ALSO BE DISMISSED

If the Court dismisses Plaintiff's ADA claim – the only claim over which it has original jurisdiction – the Court also should dismiss Plaintiff's remaining California Unruh state law claim. The Court may decline to exercise supplemental jurisdiction over state law claims where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1). See, e.g., Oliver v. Ralphs Grocery Co., 654 F.3d 903, 909 (9th Cir. 2011) (finding district court did not abuse its discretion in dismissing state-law claims under the Unruh Act and CDPA after losing original jurisdiction over ADA claim); see also Rodgers v. Chevys Restaurants, LLC, No. C13-03923 HRL, 2015 WL 909763 (N.D. Cal. Feb. 24, 2015) ("In a Title III ADA action, a district court may properly decline supplemental jurisdiction over related state-law access claims once the ADA claim has been dismissed.").

The Unruh Act provides that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section." Cal. Civ. Code § 51(f); Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 668-669. The Ninth Circuit has held that violating the ADA is a *per se* violation of the Unruh Act. Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 847 (9th Cir. Cal. 2004). However, "the mere fact that the Unruh Act incorporates violations of the ADA does not give [the] Court federal question jurisdiction over Plaintiff's state law claim." Carpenter v. Raintree Realty, LLC, No. CV 11–06798–RGK (MRWx), 2012 WL 2579179, at *2 (C.D. Cal. July 2, 2012). As there is no conceivable compelling reason to exercise supplemental jurisdiction over the tag-along Unruh claim, the Court should decline to do so, and dismiss the Complaint in its entirety.

## **CONCLUSION**

For the foregoing reasons, HWI respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice and without leave to amend, and award HWI its attorneys' fees for having to defend this vexatious litigation.

Dated:  New York, New York
        June 21, 2018

                                    BLANK ROME LLP


                                    By: */s/ Samuel D. Levy*
                                    Samuel D. Levy
                                    Craig M. Flanders
                                    Martin S. Krezalek

                                    The Chrysler Building
                                    405 Lexington Avenue
                                    New York, NY  10174-0208
                                    (212) 885-5000
                                    slevy@blankrome.com
                                    cflanders@blankrome.com
                                    mkrezalek@blankrome.com

                                    *Attorneys for Defendant Harry Winston, Inc.*